MAXIMILIEN D. FETAZ, ESQ., Nevada Bar No. 12737
mfetaz@bhfs.com
ASHLEY N. SCHOBERT, ESQ., Nevada Bar No. 16317
aschobert@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Plaintiff Sentinel Holdings, Ltd.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| SENTINEL HOLDINGS, LTD., a Nevada corporation;<br><br>Plaintiff,<br><br>v.<br><br>KIP EARDLEY, an individual; MICHELLE TURPIN, an individual; DOES I–X; ROE CORPORATIONS XI–XX;<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Sentinel Holdings, Ltd. ("Sentinel"), by and through its undersigned counsel of record, the law firm of Brownstein Hyatt Farber Schreck, LLP, hereby submits its Complaint against Kip Eardley ("Eardley") alleging as follows:

## PARTIES

1. Sentinel Holdings, Ltd. ("Sentinel" or the "Company") is a Nevada corporation organized under the laws of the State of Nevada, with its principal executive offices located in Lancaster, California. Sentinel is a publicly traded company that provides professional security services through its operating subsidiaries. The Company's common stock is registered under Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act").

2. Eardley is an individual who, on information and belief, is a resident of Henderson, Nevada. Eardley served as the Chief Executive Officer ("CEO") of Sentinel from approximately

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

2021 through 2025.

3. Michelle Turpin ("Turpin") is an individual who, on information and belief, is a resident of the State of Utah. At all relevant times, Turpin purported to be a shareholder of Sentinel, including, at various times, the holder of a majority of the Company's voting power by virtue of Series A Preferred shares. Turpin acted in coordination with Eardley with respect to the acquisition, holding, and disposition of Sentinel securities, as alleged more fully below.

4. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through X, inclusive, and ROE CORPORATIONS XI through XX, inclusive, and each of them, are unknown at the present time, and Plaintiff therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as DOES I through X and ROE CORPORATIONS XI through XX, are responsible for the claims and damages alleged herein and performed those acts or omissions in coordination with, and at the direction of, Defendants in this District. Plaintiff is also informed and believe that some or all of DOES I through X and ROE CORPORATIONS XI through XX are residents of Nevada. Once discovery has revealed the true identities of such parties, Plaintiff will seek leave of this Court to amend the Complaint to insert the true names and capacities of said Defendants DOES I though X, inclusive, and ROE CORPORATIONS XI through XX, inclusive, and to join such Defendants in this action.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Count I pursuant to 28 U.S.C. § 1331 because Sentinel's claim under Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), arises under the laws of the United States.

6. This Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367 because the state law conversion claim forms part of the same case or controversy as the federal securities claim as both claims arise from Eardley's systematic abuse of his position as CEO of Sentinel to enrich himself at the Company's expense.

7. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, which provides that any suit to enforce a liability or duty created under the Act may

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

be brought in the district wherein any act or transaction constituting the violation occurred, or in the district wherein the defendant is found, is an inhabitant, or transacts business. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Eardley resides in Henderson, Nevada. Sentinel is incorporated in Nevada. The unauthorized bank withdrawals were made from accounts maintained in Nevada, including the U.S. Bank Account at U.S. Bank's Henderson, Nevada branch. The concealment of beneficial ownership affected a Nevada corporation and its shareholders.

8. This Court has personal jurisdiction over each Defendant pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, which confers exclusive federal jurisdiction over suits to enforce any liability or duty created under the Act and authorizes nationwide service of process. Where, as here, a federal statute authorizes nationwide service of process, a court has personal jurisdiction over any defendant who has minimum contacts with the United States. *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985); *Cox v. CoinMarketCap OPCO, LLC*, 112 F.4th 822, 833–34 (9th Cir. 2024). Eardley is a resident of Henderson, Nevada, and Turpin is a resident of Utah. Both are citizens of the United States with sufficient contacts with the United States.

9. This Court has personal jurisdiction over Eardley pursuant to Nevada's long-arm statute, NRS 14.065,because Eardley committed harm against a Nevada corporation while serving as an officer of that corporation. *See Consipio Holding, BV v. Carlberg*, 128 Nev. 454, 282 P.3d 751 (2012). On information and belief, Eardley is also a resident of Henderson, Nevada, within this District.

## GENERAL ALLEGATIONS

10. Sentinel Holdings, Ltd. is a Nevada corporation, formerly known as James Maritime Holdings, Inc. ("JMTM"). The Company was redomiciled from Delaware to Nevada in 2015 and changed its name from JMTM to Sentinel Holdings, Ltd. effective July 17, 2024, with approval from the Financial Industry Regulatory Authority ("FINRA") on April 5, 2025.

11. Through its operating subsidiaries, Sentinel provides armed and unarmed security personnel and services, including on-site protection, mobile patrol, and event security. The Company operates primarily in California and serves a diverse clientele.

12. Sentinel is a reporting company under the Exchange Act and files periodic reports with the Securities and Exchange Commission ("SEC").

13. Eardley served as CEO of Sentinel from approximately 2021 through 2025.

14. In March 2020, Turpin purchased approximately $46,535 in Sentinel debt from Eardley for $5,000. Two days later, on or about March 19, 2020, Eardley caused Sentinel to convert that debt into 2,000,000 Series A Preferred shares issued to Turpin. Because the Series A Preferred shares carry 30-to-1 voting rights, this issuance gave Turpin voting power equivalent to approximately 60,000,000 common shares, representing approximately 93.76% of the total voting power.

15. On or about July 20, 2021, while serving as CEO and a director of Sentinel, Eardley caused the Company's transfer agent, Colonial Stock Transfer Company, Inc., to issue 1,000,000 shares of Sentinel common stock—250,000 shares to Eardley and 750,000 shares to Turpin—without obtaining authorization from Sentinel's Board of Directors and without adequate consideration to Sentinel.

16. At the time of the July 2021 issuance, Sentinel had approximately 3,987,462 common shares outstanding. After the issuance, Eardley held approximately 250,000 shares (approximately 5%) and Turpin held approximately 750,000 shares (approximately 15%) of the outstanding common stock.

17. On information and belief, Eardley retained actual control over the 750,000 shares issued in Turpin's name. Turpin held those shares as Eardley's nominee. In September 2025, Eardley admitted in written communications that Turpin would "do whatever I say" with respect to the shares, that he caused the shares to be issued in Turpin's name so he would "have nothing" during his divorce proceedings, and that he controlled the shares held by Turpin and the Turpin Trust.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

18. Of the 750,000 shares issued to Turpin, approximately 100,000 were deposited into a brokerage account at Fidelity Investments held in the name of the Michelle Turpin Living Trust, U/A dated October 7, 2003, FBO Michelle Turpin ("Turpin Trust Fidelity Account"). The remaining approximately 650,000 shares were held at Colonial Stock Transfer Company, Inc., Sentinel's transfer agent, in Turpin's name.

19. Beginning no later than September 2025, Turpin and/or Eardley commenced a systematic liquidation of the shares held in the Turpin Trust Fidelity Account. Non-Objecting Beneficial Owner ("NOBO") records obtained by Sentinel document the following balances in the Turpin Trust Fidelity Account at the dates indicated:

a. As of September 8, 2025: 99,830 shares;

b. As of December 26, 2025: 94,280 shares;

c. As of April 27, 2026: 69,930 shares;

d. As of May 27, 2026: 56,630 shares;

e. As of June 12, 2026: 50,630 shares;

f. As of July 24, 2026: 29,430 shares;

g. As of August 21, 2026: 5,530 shares; and

h. As of September 18, 2026: 468 shares.

20. In total, the Turpin Trust Fidelity Account was reduced by approximately 99,362 shares between September 2025 and September 2026, representing the liquidation of substantially all of the approximately 100,000 shares deposited into that account. At the share prices reported during this period, the approximate proceeds of these sales exceeded $496,000.

21. The pace of selling accelerated over time. Between September 2025 and December 2025, approximately 5,550 shares were sold. Between April and September 2026, approximately 69,462 shares were sold. The largest single-period reductions occurred between June 12 and July 24, 2026 (approximately 21,200 shares) and between July 24 and August 21, 2026 (approximately 23,900 shares).

22. The systematic and near-total liquidation of the Turpin Trust Fidelity Account is consistent with, and further evidences, Eardley's continuing control over the shares held in Turpin's

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

name and the coordinated disposition of Sentinel securities by Eardley and Turpin acting as a group.

23. For the remaining shares 650,000 shares held at Colonial Stock Transfer Company, Inc., Sentinel's transfer agent, in Turpin's name, Colonial Stock Transfer Company has stated its intent to proceed with processing the restriction removal on those shares on October 10, 2026. Upon information and belief, once the restation is removed, Eardley and Turpin will move forward with selling those shares and further the decline in the stock price.

24. The coordinated sales by Eardley and Turpin without adequate disclosure of a Schedule 13D has led to decline in stock price that has harmed the Company and prevented its ability to uplist. Any further sales, including the 650,000 shares held at Colonial Stock Transfer Company, Inc., would likely lead to a further decline in stock price and harm to the Company.

25. In a separate proceeding, *Eardley v. Sentinel Holdings, Ltd.*, Case No. 250909149, Utah Third Judicial District (the "Utah Action"), Eardley sought a declaration that his 250,000 shares of Sentinel common stock were validly issued and freely transferable. Sentinel filed counterclaims alleging, among other things, that the shares were issued without Board authorization or adequate consideration. On July 2, 2026, the Utah court granted summary judgment in Eardley's favor, declared his 250,000 shares validly issued and freely transferable, and ordered Sentinel and its transfer agent to remove any restrictive legend from Eardley's shares.

26. On information and belief, following the Utah court's order, Eardley caused his 250,000 shares to be transferred from the Company's transfer agent to a brokerage account at Alpine Securities. As of September 1, 2026, the Company's transfer agent records reflected 240,000 shares remaining in Eardley's name at the transfer agent, indicating that Eardley had begun depositing his shares into a brokerage account.

27. As of September 24, 2026, a Security Position Report issued by The Depository Trust Company reflected that Alpine Securities held 232,195 shares of Sentinel common stock. On information and belief, those shares are attributable to Eardley, and the reduction from 250,000 shares to 232,195 shares reflects the sale of approximately 17,805 shares by Eardley since the removal of the restrictive legend.

28. Notwithstanding the foregoing acquisition, holding, and systematic disposition of Sentinel securities, neither Eardley nor Turpin filed a Schedule 13D with the SEC to disclose their beneficial ownership, despite individually and collectively exceeding the 5% reporting threshold under Section 13(d) of the Exchange Act.

29. Eardley's abuse of his CEO position extended beyond the concealment of beneficial ownership.

30. During his tenure as CEO, Eardley was the sole authorized signer on the Company's corporate bank account maintained at JPMorgan Chase Bank, N.A. (the "Chase Account"). The Chase Account was held in the name of James Maritime Holdings Inc., the Company's former legal name.

31. No written employment agreement, consulting agreement, board resolution, or other instrument authorized Eardley to draw cash compensation, personal expenses, or other disbursements from the Company's bank account.

32. In the Utah Action, Eardley represented that his compensation for serving as CEO of the Company from 2021 through 2025 consisted of 250,000 shares of Company common stock, and the Utah court granted summary judgment in Eardley's favor on that claim. Having represented that the shares constituted his full compensation for his service as CEO, Eardley had no basis to draw additional cash compensation from the Company's bank account.

33. Between June and September 2024, while serving as CEO and sole authorized signer on the Chase Account, Eardley made a series of unauthorized withdrawals and transfers from the Company's bank account for his own personal use and benefit. These withdrawals and transfers were not authorized by any agreement or corporate action. The specific transactions, as documented in the Company's bank records, include the following:

a. In June 2024, Eardley made one cash withdrawal from the Chase Account in the amount of $4,000, on or about June 13, 2024.

b. In July 2024, Eardley made five cash withdrawals from the Chase Account totaling $75,000: $40,000 on or about July 2, 2024; $5,000 on or about July 16,





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

2024; $5,000 on or about July 26, 2024; $10,000 on or about July 26, 2024; and $15,000 on or about July 30, 2024.

c. In August 2024, Eardley made three cash withdrawals from the Chase Account totaling $32,500: $10,000 on or about August 7, 2024; $12,500 on or about August 15, 2024; and $10,000 on or about August 21, 2024.

d. In September 2024, Eardley made two cash withdrawals from the Chase Account totaling $15,000: $10,000 on or about September 20, 2024; and $5,000 on or about September 26, 2024.

34. In total, Eardley made cash withdrawals from the Chase Account in the approximate amount of $126,500 during the period from June through September 2024.

35. In addition to the cash withdrawals, Eardley caused the Company to make wire transfers from the Chase Account directly to an account in the name of Kip Eardley: $5,000 on or about June 12, 2024; and $12,000 on or about July 2, 2024. The total of such wire transfers to Eardley's personal account was approximately $17,000.

36. A debit card linked to the Chase Account bearing the name "Kip Donan Eardley" (card ending in 2776) was used for expenditures that appear personal in nature, including restaurant dining, hotel stays, and airline charges in Las Vegas, Nevada, among other locations. These charges were made directly against the Company's bank account without any documented expense reporting or approval process and in the absence of any employment or consulting agreement authorizing such expenditures. The total of such charges is an amount to be determined through discovery.

37. In total, the documented cash withdrawals, wire transfers, and personal charges removed nearly $150,000 from Sentinel's corporate bank account during a four-month period. These withdrawals were made by Eardley as the sole authorized signer on the Chase Account, without corporate authorization, and for his own personal use and benefit.

38. During this same period, the Company also maintained a business checking account at U.S. Bank, N.A. (the 'U.S. Bank Account'). The U.S. Bank Account was held in the name of Sentinel Holdings Ltd. at U.S. Bank's Henderson, Nevada branch. On information and belief,

Eardley exercised control over the U.S. Bank Account during his tenure as CEO. From March through September 2025, Eardley made or caused to be made a series of unauthorized withdrawals and transfers from the U.S. Bank Account for his own personal use and benefit.

39. In March 2025, two cash withdrawals were made from the U.S. Bank Account totaling $10,000: $5,000 on or about March 11, 2025; and $5,000 on or about March 24, 2025.

40. In April 2025, one cash withdrawal was made from the U.S. Bank Account in the amount of $4,000, on or about April 14, 2025.

41. In June 2025, two cash withdrawals were made from the U.S. Bank Account totaling $22,500: $20,000 on or about June 5, 2025; and $2,500 on or about June 16, 2025.

42. In July 2025, one cash withdrawal was made from the U.S. Bank Account in the amount of $10,000, on or about July 24, 2025.

43. In August 2025, two cash withdrawals were made from the U.S. Bank Account totaling $15,000: $10,000 on or about August 14, 2025; and $5,000 on or about August 26, 2025.

44. In September 2025, three cash withdrawals were made from the U.S. Bank Account totaling $15,000: $5,000 on or about September 3, 2025; $5,000 on or about September 12, 2025; and $5,000 on or about September 29, 2025.

45. In total, cash withdrawals from the U.S. Bank Account during the period from March through September 2025 were in the approximate amount of $76,500.

46. In addition, Eardley received two Zelle payments sent directly from the U.S. Bank Account to an account in the name of Kip Eardley: $2,500 on or about June 17, 2025; and $3,000 on or about July 2, 2025. The total of such payments directly to Eardley was $5,500.

47. In sum, across both the Chase Account and the U.S. Bank Account, the documented unauthorized withdrawals, wire transfers, personal charges, and direct payments to Eardley total in excess of $230,000. These withdrawals and transfers were made by Eardley or at his direction as the controlling officer of the Company, without corporate authorization, and for his own personal use and benefit.

48. There may be additional charges, withdrawals, and unauthorized expenses that Eardley performed that will be revealed during discovery in this matter.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

49. These acts—the concealment of beneficial ownership of Sentinel securities and the misappropriation of corporate funds—were part of a common course of conduct by Eardley to exploit his position as CEO of Sentinel for personal enrichment, at the expense of the Company and its shareholders.

**COUNT I**

**Violation of Section 13(d) of the Securities Exchange Act of 1934**

**(Against Eardley and Turpin)**

50. Sentinel realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

51. Sentinel's common stock is registered under Section 12(g) of the Exchange Act, 15 U.S.C. § 78l(g). Sentinel is a reporting company that files periodic reports, including annual reports on Form 10-K and quarterly reports on Form 10-Q, with the SEC.

52. Section 13(d)(1) of the Exchange Act, 15 U.S.C. § 78m(d)(1), requires any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class registered under Section 12, is directly or indirectly the beneficial owner of more than 5% of such class, to file a Schedule 13D with the SEC within five business days[1] after such acquisition, pursuant to Rule 13d-1(a), 17 C.F.R. § 240.13d-1(a).

53. Section 13(d)(3) of the Exchange Act, 15 U.S.C. § 78m(d)(3), provides that when two or more persons act as a group for the purpose of acquiring, holding, or disposing of securities of an issuer, such group shall be deemed a "person" for purposes of Section 13(d). Under Rule 13d-5(b)(1), 17 C.F.R. § 240.13d-5(b)(1), when two or more persons agree to act together for the purpose of acquiring, holding, voting, or disposing of equity securities of an issuer, the group

[1] At the time Defendants acquired beneficial ownership of Sentinel's common stock in July 2021, Rule 13d-1(a) required a Schedule 13D to be filed within ten calendar days after the triggering acquisition. The SEC subsequently amended Rule 13d-1(a), effective February 5, 2024, to shorten that deadline to five business days. *See* Modernization of Beneficial Ownership Reporting, 88 Fed. Reg. 76,896, 76,896–97 (Nov. 7, 2023) (codified at 17 C.F.R. § 240.13d-1(a)). Under either deadline, Defendants' filing obligation has long since expired, and Defendants still have not filed a proper Schedule 13D.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

formed thereby is deemed to have acquired beneficial ownership of all equity securities of that issuer beneficially owned by any member of the group.

54. On or about July 20, 2021, Eardley acquired 250,000 shares and Turpin acquired 750,000 shares of Sentinel common stock. At that time, Sentinel had approximately 4,987,462 shares of common stock outstanding after giving effect to the issuance.

55. Eardley's 250,000 shares represented approximately 5.0% of the outstanding common stock. Turpin's 750,000 shares represented approximately 15.0%. Collectively, Eardley and Turpin held 1,000,000 shares, approximately 20.1% of the outstanding common stock.

56. Eardley and Turpin acted as a group within the meaning of Section 13(d)(3) and Rule 13d-5. They coordinated the acquisition, holding, and disposition of Sentinel securities through an arrangement in which: Eardley, as CEO, caused Sentinel to issue 750,000 shares to Turpin; Turpin agreed to hold those shares as Eardley's nominee; Eardley retained actual control over the shares; and Eardley directed the sale and disposition of those shares on Turpin's behalf. Their combined beneficial ownership as a group exceeded 5% of Sentinel's outstanding common stock.

57. Under Rule 13d-1(a), 17 C.F.R. § 240.13d-1(a), as in effect in July 2021, Eardley and Turpin were each required to file a Schedule 13D within ten days after acquiring beneficial ownership in excess of 5% of Sentinel's common stock, or no later than July 30, 2021.

58. Neither Eardley nor Turpin filed a Schedule 13D, either individually or jointly as a group. No Schedule 13D has been filed to date.

59. In addition, Eardley retained beneficial ownership of the shares held in Turpin's name by virtue of his power to direct the voting and disposition of those shares. *See* Rule 13d-3(a), 17 C.F.R. § 240.13d-3(a). Attributing those shares to Eardley, his total beneficial ownership was approximately 1,000,000 shares, or approximately 20.1% of the outstanding common stock.

60. Eardley and Turpin failed to disclose the nominee arrangement, the true beneficial ownership of the shares, the source and amount of consideration, the purpose of the acquisition, and the existence of contracts, arrangements, or understandings between them concerning Sentinel securities, as required by Schedule 13D, 17 C.F.R. § 240.13d-101, Items 1 through 7.

61. Subsequently, Turpin and the Michelle Turpin Trust sold shares of Sentinel common stock on the open market without filing any Schedule 13D amendment disclosing those dispositions, as required by Rule 13d-2(a), 17 C.F.R. § 240.13d-2(a).

62. Eardley's and Turpin's ongoing failure to file Schedule 13D and any required amendments continues to deprive Sentinel and its shareholders of material information regarding the true ownership and control of Sentinel's securities.

63. Sentinel has suffered and continues to suffer irreparable harm from Defendants' ongoing failure to comply with Section 13(d). The concealment of Defendants' true beneficial ownership has deprived Sentinel and its shareholders of information essential to informed corporate governance, including the ability to evaluate potential shifts in corporate control and to ensure compliance with the Company's own disclosure obligations.

64. Sentinel has no adequate remedy at law. The harm caused by the failure to disclose beneficial ownership under Section 13(d) is informational in nature and cannot be remedied through monetary damages. Each day that Defendants fail to file an accurate Schedule 13D, the harm to Sentinel and the investing public continues.

65. Sentinel is entitled to preliminary and permanent injunctive relief: (i) enjoining Eardley and Turpin from further violations of Section 13(d); (ii) compelling Eardley and Turpin to file a complete and accurate Schedule 13D, including all required amendments; and (iii) prohibiting Eardley and Turpin from voting, selling, or otherwise disposing of any Sentinel securities until they have complied in full with the requirements of Section 13(d) and the rules thereunder.

**COUNT II**

**Conversion**

**(Against Eardley)**

66. Sentinel realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

67. Sentinel held a clear ownership interest in the funds maintained in the Chase Account.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

68. Eardley, as a corporate officer, was obligated to use the Company's funds solely for authorized corporate purposes.

69. During the period from June through September 2024, Eardley intentionally exercised dominion and control over Sentinel's funds by making a series of unauthorized cash withdrawals, wire transfers to himself, and personal charges against the Company's bank account, as described in the preceding paragraphs.

70. Eardley's withdrawals were wrongfully exerted over Sentinel's property in denial of, and inconsistent with, Sentinel's rights to those funds.

71. Eardley's acts were committed in derogation, exclusion, and defiance of Sentinel's ownership rights in its corporate funds.

72. No employment agreement, consulting agreement, board resolution, or other corporate authorization permitted Eardley to withdraw or transfer the Company's funds for personal use.

73. As a direct and proximate result of Eardley's conversion, Sentinel has suffered actual damages including the value of the funds converted, consequential damages including the loss of use of the converted funds, and interest on the amounts wrongfully taken.

74. Eardley's conduct was oppressive and undertaken with implied malice, entitling Sentinel to an award of punitive damages pursuant to NRS 42.005.

75. Sentinel has been forced to retain the services of an attorney to prosecute this matter, and thus is entitled to recover reasonable costs and attorneys' fees incurred as provided under any agreement and by law.

**PRAYER FOR RELIEF**

WHEREFORE, Sentinel prays for relief from this Court as follows:

1. For a judgment in favor of Sentinel and against Eardley and Turpin;
2. A declaration that Eardley and Turpin have violated Section 13(d) of the Exchange Act and the rules and regulations promulgated thereunder;

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

3. Preliminary and permanent injunctive relief compelling Eardley and Turpin to comply with Section 13(d) of the Exchange Act, including the filing of a complete and accurate Schedule 13D and all required amendments;
4. An order prohibiting Eardley and Turpin from voting, selling, or otherwise disposing of any Sentinel securities until they have complied in full with the requirements of Section 13(d) and the rules thereunder;
5. Actual damages including the specific dollar amounts of the funds wrongfully converted, together with interest thereon;
6. Consequential damages, including damages for the loss of use of the converted property;
7. Punitive damages as permitted by NRS 42.005;
8. Pre-judgment and post-judgment interest at the prevailing legal rate;
9. For an award of attorneys' fees and costs, as and if permitted by Nevada law;
10. For such other relief as this Court deems appropriate under the circumstances.

**DEMAND FOR A JURY TRIAL**

Under FRCP 38, Plaintiff demands a trial by jury on all issues and claims so triable.

DATED this 2nd day of October, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
MAXIMILIEN D. FETAZ, ESQ., Nevada Bar No. 12737
mfetaz@bhfs.com
ASHLEY N. SCHOBERT, ESQ., Nevada Bar No. 16317
aschobert@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Plaintiff Sentinel Holdings, Ltd.*